UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RYDER INTEGRATED LOGISTICS, INC.                                         Plaintiff,

v.                                                              Civil Action No: 3:14-cv-347-DJH

CORDELL TRANSPORTATION CO., LLC, *et al.*,                           Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ryder Integrated Logistics, Inc. contracted with Toyota Motor Manufacturing North America, Inc. to transport Toyota's motor vehicle engines. In 2013, a truck driven by Defendant Mitchell W. Turner collided with a Ryder truck carrying Toyota engines, causing minor damage to the engines. Pursuant to the contract between them (the "Contract"), Ryder reimbursed Toyota for the entire shipment of engines involved in the collision, notwithstanding the minimal damage.

The litigants agree on these facts and on liability for the accident. They disagree, however, on the scope of damages for which Defendants Turner, Cordell Transportation Co., LLC, and Apex Express, Inc. (collectively, "Cordell") are responsible. Ryder seeks subrogation from Cordell for the $189,869.26 Ryder paid Toyota under the Contract. (Docket No. 15) Cordell, however, asserts that its damages should be limited to $850.96—the amount of actual damage its negligence proximately caused. (D.N. 21, PageID # 5) The Court must now decide, based on principles of tort and equity, which damages calculation is proper. After careful consideration, the Court adopts Cordell's measurement of damages.

1

## I. Factual Background

On January 16, 2013, two tractor-trailers collided on Interstate 65 in Bullitt County, Kentucky. Turner's negligent driving was the sole cause of the collision. (D.N. 14, PageID # 1) At the time, Turner—a professional truck driver—worked for Cordell Transportation Co., LLC and Apex Express, Inc., and he was acting within the course and scope of his employment. (D.N. 14, PageID # 2) Ryder owned and operated the truck Turner collided with. Ryder's truck was carrying 96 new Toyota engines, with a total value of $190,973.76. (D.N. 14, PageID # 2) The 96 engines were damaged in the collision, costing an estimated $850.96[1] to repair them—$8.86 per engine. (D.N. 14, PageID # 2)

When the engines were finally delivered, Toyota rejected the entire shipment as nonconforming and required Ryder to pay the full value of the 96 engines, minus salvage cost, as the Contract allowed. (D.N. 14, PageID # 2) After Toyota salvaged the engines for a total of $1,332.00, Ryder paid Toyota $189,869.26 and received an assignment of Toyota's rights to recover monetary damages from Cordell. (DN 14, PageID # 2-3) Ryder now seeks $189,869.26—$1,977.80 per engine. (D.N. 14, PageID # 3)

The parties' disagreement focuses on two issues: the calculation of damages that Cordell must pay Ryder and the interest due thereon. Cordell argues that its damages should be limited to $850.96—the cost to repair the damage to the Toyota engines. (D.N. 21, PageID # 5) Ryder demands Cordell reimburse it for the entire amount Ryder was obligated to pay Toyota. (D.N. 14, PageID # 3) Additionally, Ryder says the damages owed to it are liquidated and under state law deserve an eight percent per annum interest on the damages. (D.N. 15, PageID # 8-9)

---

[1] Although Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment says that the actual damages to the freight totaled $860.96, this appears, based on the other briefings, to be a mistake. The Court will follow the amount laid out by the parties in the Joint Stipulation of Relevant Facts.

2

Cordell counters that the damages are unliquidated, and the interest rate is at the discretion of the Court. (D.N. 14, PageID # 4-5)

## II. Standard

To grant a motion for summary judgment, this Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## III. Discussion

Since the parties agree on the facts at issue, the Court concludes that genuine issues of material fact do not exist and grants Ryder's motion for summary judgment. But the Court awards Ryder only $850.96—the value of damage Cordell actually caused. Ryder's subrogation claim is limited by principles of equity and proximate cause.

### A. Ryder May Recover $850.96

As an initial matter, Ryder argues that it may recover either under indemnification or subrogation. Subrogation is the proper vehicle. Subrogation is necessary when one party is obligated to pay another for the negligence of a third party, while indemnification is utilized when there is some form of shared liability between the third party and the party seeking reimbursement from the third party. *See Am. Premier Ins. Co. v. McBride*, 159 S.W.3d 342, 345-46 (Ky. Ct. App. 2004). Thus, under Kentucky law, there is no common law indemnity here

3

as there is no shared liability between Cordell and Ryder. And so, Ryder's claim against Cordell is for subrogation:

> The requisites for subrogation are usually described as (1) payment by one of a debt of another; (2) subrogee is not a volunteer; (3) the debt is not one for which the subrogee is primarily liable; (4) the entire debt must be paid unless the others who made payment are joined; and (5) subrogation must not work any injustice to the rights of others.

*Wine v. Globe Am. Cas. Co.*, 917 S.W.2d 558, 561 (Ky. 1996) (quoting *Bryan v. Henderson Elec. Co.*, 566 S.W.2d 823, 825 (Ky. Ct. App. 1978)). There is no dispute that Cordell owes *some* amount of money—both parties agree that damages equal at least $850.96—and as a result, the first requisite for subrogation is satisfied. Likewise, Toyota recovered the entire $189,869.26 it sought as repayment for the damaged engines. As a result, whether Cordell's debt amounts to $850.96 or $189,869.26, the entire debt was paid to Toyota and the fourth requisite for subrogation is satisfied. Although the first and fourth requisites are met, the parties dispute whether the second, third, and fifth requisites for subrogation are fulfilled. The Court agrees that Ryder was not a volunteer. But because Cordell was not the proximate cause of Ryder's harm, and because requiring Cordell to pay $189,869.26 would work injustice, the Court orders Cordell to subrogate only $850.96.

### 1. Ryder Was Not a Volunteer

Ryder and Cordell agree that Toyota had the right, under the Contract, to exercise sole discretion to accept, repair, or reject any shipment of nonconforming goods—including damaged goods. (D.N. 14, PageID # 2) Additionally, the parties agree that Toyota, pursuant to the Contract, rejected the damaged engines and Toyota required Ryder to pay $189,869.26. (D.N. 14, PageID # 2)

4

Though Ryder voluntarily accepted the risks and benefits of the Contract, it did not "volunteer" to pay Toyota. A volunteer discharges the debt of another without a *legal obligation* to do so; "[o]rdinarily one who discharges the debt of another without a legal or moral obligation to do so is considered a volunteer and will not be subrogated to the discharged debtor's rights against another." *Dodson v. Key*, 508 S.W.2d 586, 588 (Ky. Ct. App. 1987). If a party discharges a debt because it had an *obligation* to do so, then the party is not a volunteer and may make a claim for subrogation. *See Henningsen v. U.S. Fid. & Guar. Co.*, 208 U.S. 404, 411 (1908); *City of Jackson v. First Nat. Bank of Jackson*, 157 S.W.2d 321, 326 (Ky. 1941); *Vance v. Atherton*, 67 S.W.2d 968, 970 (Ky. 1934). Because Ryder had a legal obligation to pay Toyota the value of the damaged cargo, Ryder was not a volunteer. (*See* D.N. 14, PageID # 2; D.N. 15.1, PageID # 10)

Additionally, the Contract stipulated that Ryder would pay the debt and, in return, be assigned the right to pursue a subrogation claim against Cordell. (D.N. 15.6, PageID # 1) A party that pays the debt of another to a creditor and receives subrogation rights from the creditor is not a volunteer: "one, likewise, who pays the debt of another pursuant to an agreement, express or implied, for subrogation, is not a volunteer, and is entitled to subrogation to the creditor's rights." *Commercial Standards Ins. Co. v. Am. Emp. Ins. Co.*, 209 F.2d 60, 65 (6th Cir. 1954). Because Ryder paid Cordell's debt to Toyota and was assigned the rights to pursue a subrogation claim against Cordell, Ryder was not a volunteer.

### 2. Cordell's Negligence Proximately Caused $850.96 of Damages

Cordell did not proximately cause Ryder's obligation to pay Toyota the full $189,869.26. "When the original negligence is remote and only furnishes the occasion of the injury, it is not the proximate cause thereof." *Peak v. Barlow Homes,* 765 S.W.2d 577, 579 (Ky. Ct. App. 1998) (citing *Commonwealth, Dept. of Highways v. Graham,* 410 S.W.2d 619, 620 (Ky. 1967)). In

5

*Peak*, a pickup truck passenger was killed when another vehicle hit the truck while turning off a highway into a service entrance owned—without a permit and in violation of state law—by Barlow Homes. *Id*. at 578. The deceased's estate sued, claiming that Barlow Homes—by illegally owning and maintaining the service entrance—was the proximate cause of the death. *Id.* The Kentucky Court of Appeals affirmed the trial court's summary judgment for Barlow Homes, finding that the violation of the statute was "a condition too remote to be a proximate cause of Peak's death." *Id.* at 579.

Similar to *Peak*, Cordell's negligence was not the reason that Ryder had to pay the $189,869.26 of damages. Rather, the minor damage Cordell's negligence did to the engines merely "furnishe[d] the occasion of the injury"; Toyota's refusal to mitigate Ryder's damages and rejection of the entire cargo caused Ryder's damages. Cordell created the opportunity for Toyota to reject, but the harm did not occur until Toyota—pursuant to the Contract—actually rejected. Because the Contract, and not the negligence of Cordell, was the proximate cause of Ryder's obligation to pay Toyota $189,869.26 in damages, Cordell should not be forced to reimburse Ryder under these circumstances.

### 3. Equitable Principles Limit Cordell's Liability to Ryder

Equity would not be served if Cordell was required to subrogate Ryder for the entire $189,869.26. "[Subrogation] is applied only when necessary to bring about equitable adjustment of a claim founded on right and natural justice." *Vance*, 67 S.W.2d at 970. Subrogation relies on "natural principles of right and justice, when applied to the facts of the particular case." *Id.*

It would be facially unjust to require Cordell to suffer 220 times the damage it actually caused only because of a contract to which it was not party. The unfair result that Ryder seeks has no limitation: If a future defendant negligently caused $1 of damage to a Toyota product worth $1,000,000 that Ryder was transporting, Toyota could force Ryder to pay the entire

$1,000,000 for the item. and Ryder in turn could force the future defendant to pay the entire $1,000,000. An award of $189,869.26 is not supported by the applicable law and would be unjust.

### B. Damages are Unliquidated

The parties also dispute whether these damages are liquidated. The $850.96 of damages that Cordell must pay Ryder is unliquidated. The Kentucky Supreme Court has held that "liquidated damages" refers to damages "made certain or fixed by agreement of parties or by operation of law." *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991) (citing BLACK'S LAW DICTIONARY 930 (6th ed. 1990)). Additionally, it has characterized "unliquidated damages" as "[d]amages which have not been determined or calculated . . . not yet reduced to a certainty in respect to amount." *Id.* (citing BLACK'S LAW DICTIONARY 1537 (6th ed. 1990)). Ryder argues that the damages owed to it are liquidated because the amount was "established with reasonable certainty." (D.N. 15.1, PageID # 14) (quoting *3D Enters. Contr. Corp. v. Louisville & Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005)). Contrary to Ryder's arguments, this Court has found that the damages owed to Ryder did not total $189,869.26. The mere existence of the dispute of how damages should be calculated, and the fact that this Court agrees with Cordell's calculation of damages instead of Ryder's, shows that the amount of damages are "not yet reduced to a certainty in respect to amount." *Nucor Corp.* 812 S.W.2d at 141. Thus, the damages are unliquidated.

In *Poundstone v. Patriot Coal Co., Ltd.*, 485 F.3d 891 (6th Cir. 2007), the Sixth Circuit reviewed "Kentucky Supreme Court cases addressing the proper rate of prejudgment interest" and found that "[i]n cases involving unliquidated debts, 'the trial court may award prejudgment interest at any rate up to 8%, or it may choose to award no prejudgment interest at all, but it may

not exceed the legal rate of 8%.'" *Id.* at 903 (quoting *Fields v. Fields*, 58 S.W.3d 464, 467 (Ky. 2001)).

The damages Cordell owes Ryder are unliquidated, and this Court may award prejudgment interest at its discretion so long as the interest rate is within the confines laid out by the Kentucky Supreme Court. The Court awards Ryder $850.96 plus interest of 4% per annum from the date Ryder notified Cordell of its claim to the date of judgment. A separate judgment will be entered this date.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment (D.N. 15) is GRANTED to the extent that Defendants are liable to Plaintiff for damages totaling $850.96, plus 4% interest per annum from the date Plaintiff notified Defendants of its claim to the date of the judgment.

This is a final and appealable order.